The UNIVERSITY OF TEXAS AT AUSTIN, Appellant,

v.

Kathleen L. JOKI, et al., Appellees.

No. 14605.

Court of Appeals of Texas, Austin.

June 17, 1987.

Rehearing Denied Sept. 16, 1987.

Jim Mattox, Atty. Gen., Toni Hunter, Asst. Atty. Gen., Austin, for appellant.

Malcolm Greenstein, Greenstein & Kolker, Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and ABOUSSIE, JJ.

GAMMAGE, Justice.

Kathleen L. Joki and seven other plaintiffs, employees of The University of Texas at Austin ("The University"), sued The University in county court alleging they were denied salary increases to which they were entitled under appropriations legislation enacted in 1981 by the 67th Texas Legislature. The trial court granted summary judgment in favor of Joki, et al., on the issue of liability and later signed a final judgment awarding back pay to the eight plaintiffs. Plaintiffs requested but were denied attorney's fees and a declaratory judgment. We will affirm the judgment.

We first address appellees' motion to dismiss contending The University did not timely file its notice of appeal and that this appeal should be dismissed for want of jurisdiction.

 The final judgment was signed on July 1, 1985, which ordinarily would have triggered the time for perfecting an appeal. Tex.R.Civ.P.Ann. 306a(1) (Supp.1986).[1] The trial judge, however, signed an additional order certifying that The University did not have actual notice of the judgment until October 24, 1985. Because the date of actual notice was more than twenty days after the judgment was signed, the time period for perfecting an appeal began on

---

1. *See* now Tex.R.App.P.Ann. 5(b)(1) (Supp. 1987).

the date of actual notice of the judgment or ninety days from the date the judgment was signed, whichever was sooner. Rule 306a(4).[2] Ninety days from July 1, 1985, the date the judgment was signed, was September 29, 1985, sooner than the date of actual notice and, consequently, the date the period for perfecting appeal began. The University had filed a motion for new trial on August 7th which, although premature, is deemed to have been filed on September 29th. Tex.R.Civ.P.Ann. 306c (Supp. 1986). Because a timely motion for new trial was filed, The University had ninety days from September 29th to perfect its appeal. Tex.R.Civ.P.Ann. 356(a) (1985).[3] Notice of appeal was filed November 21, 1985, within the ninety days allowed. We consequently have jurisdiction to hear this appeal and appellees' motion to dismiss is overruled.

The University conceded in oral argument before this Court that the trial court had jurisdiction over this cause; we agree that it did and therefore need not address The University's fifth point of error contesting that jurisdiction.

By its fourth point of error, The University argues the summary judgment granted by the trial court was improper because it was grounded solely on 42 U.S.C.A. § 1983 (West 1981), which is an improper theory of recovery. Appellees did allege in their motion for summary judgment, by incorporation of their first amended original petition, that the suit was brought pursuant to the Uniform Declaratory Judgment Act and 42 U.S.C. § 1983. The declaratory judgment action was dismissed by the trial court and appellees concede before this Court that at least one requirement necessary to maintain a § 1983 action has not been met. The University argues that because there was no legal theory expressly presented in appellees' motion to support the summary judgment, the judgment cannot stand. We disagree.

■ Although neither legal theory expressly relied upon by appellees in their motion will support the summary judgment, appellees alleged further that they had been denied salary increases to which they were entitled under two specified appropriations acts. The relevant provisions of those acts as they related to appellees were discussed in the motion at length. The motion was clearly sufficient to give "fair notice" to The University that appellees were claiming entitlements under the specified appropriations acts. Tex.R.Civ.P. Ann. 45(b) and 47(a) (1979). Indeed, The University's cross-motion for summary judgment addressed this very legislation in detail, indicating it was well aware of the basis for appellees' cause of action.

■ While it is true a motion for summary judgment must state the *specific* grounds therefor, Tex.R.Civ.P.Ann. 166–A(c) (Supp.1987), The University failed to except to appellees' lack of specificity and cannot now argue this deficiency as a ground for reversal on appeal. *Westchester Fire Insurance Co. v. Alvarez*, 576 S.W.2d 771 (Tex.1978); *Carter v. Gerald*, 577 S.W.2d 797 (Tex.Civ.App.1979, writ ref'd n.r.e.); *see also City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). The University's fourth point of error is overruled.

By its third point of error, The University argues the trial court erred in granting appellees' motion for summary judgment and in denying The University's cross-motion for summary judgment. Argument under this point focuses on three affidavits offered in support of The University's proposed construction of the appropriations legislation under which the appellees claim entitlement. Two of the affidavits contain explanations by employees of the Comptroller and Legislative Budget Board of the bases for the legislative analysis each performed for his respective employer. The third affiant, Vice President for Business Affairs at The University, stated that if the appellees' construction of the legislation is correct, The University's payroll will be increased by 1.8 million dollars. The University argues that appellees' failure to

---

**2.** *See* now Tex.R.App.P.Ann. 5(b)(4) (Supp. 1987).

**3.** *See* now Tex.R.App.P.Ann. 41(a)(1) (Supp. 1987).

counter these affidavits with affidavits of their own establishes The University's right to summary judgment as a matter of law; or, in the alternative, establishes a fact issue which precludes summary judgment in favor of appellees. We disagree.

■ Summary judgment was granted solely on the issue of liability. Liability turned solely upon the language of two appropriations statutes, the construction of which is a question of law. *Associated Indemnity Corporation v. Oil Well Drilling Company*, 258 S.W.2d 523, 527–28 (Tex.Civ.App.1953), *aff'd* 153 Tex. 153, 264 S.W.2d 697 (1954). The affidavits attached to The University's motion could not convert this legal question into a fact issue and, consequently, could not preclude the trial court from granting summary judgment in favor of the appellees. The University's third point of error is overruled.

By its first and second points of error, The University contends the trial court misconstrued the 1981 appropriations legislation by failing to give sufficient weight to the contemporaneous construction of key statutory terms in those acts by administrative officials charged with administration of the legislation, and further erred by ruling that mandated salary increases attached to positions unfilled on the effective date of the legislation and did not inure only to the benefit of employees holding positions on the effective date.

In a special emergency appropriations act, the 67th Legislature directed that "[e]ach state agency … pay an increase in monthly compensation to each of its employees" beginning in February of 1981. S.B. 1, Act of Jan. 30, 1981, ch. 1, § 1, 1981 Tex. Gen. Sess. Laws 1. Section 2(a) of S.B. 1 directed that "[t]he increase in compensation for an *employee position* is $50 or 5.1 percent of the monthly compensation rate in effect for the *position* on January 1, 1981, whichever amount is greater." (emphasis added)

In the General Appropriations Act for the 1981–83 biennium, the 67th Legislature made additional provisions for pay increases to employees of state agencies of higher education. The following two provisions are pertinent to this appeal:

Sec. 22(a). All regular *employees*, excluding [certain faculty and professional positions] shall receive a minimum annual salary increase of 14.3% in fiscal 1982 and 6.7% in fiscal 1983. Such increase shall be in addition to the salary rates as of January 31, 1981 [before the effective date of the emergency increase of S.B. 1].

\* \* \* \* \* \*

Sec. 34. In addition to the amounts previously appropriated for salaries to higher education agencies in this Article, $3,700,000 for fiscal 1982 and $4,300,000 for fiscal 1983 are appropriated to the Comptroller of Public Accounts from the General Revenue Fund for the purpose of insuring that all *employees' positions*, excluding faculty, which received no more than the $50 minimum pay raise under S.B. 1, Sixty-Seventh Legislature, Regular Session, receive a 9.2% pay raise above their August 1981 salary rates.

General Appropriations Act, 1981 Tex. Gen. Laws at 3725 and 3728 (emphasis added).

Resolution of this case turns upon proper interpretation of the terms "employees" and "employees' positions" in the above-quoted provisions. At the time suit was filed in the county court, appellees were clerical or library employees of The University who had been hired for or promoted to their positions after the effective date of the General Appropriations Act of 1981. The University denied salary increases to appellees because it interpreted the appropriations legislation as mandating raises only to "employees" who held their particular positions on August 31, 1981. Appellees, on the other hand, claim the salary increases attached to the particular "positions," regardless of which employee, if any, occupied such a position on the effective date of the legislation.

■ It is a well-established rule of statutory construction that every word, sentence, clause and phrase of a statute has been used for a purpose and should be given effect. *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex.1977); *Perkins v. State*, 367

S.W.2d 140, 146 (Tex.1963). If we accept appellees' argument that the pay increases attached to "positions," the references to "employees" can be construed to mean those employees occupying the affected positions at any time during the fiscal biennium. If we accept the construction proposed by The University, the word "position" as used in S.B. 1 and in § 34 of the General Appropriations Act of 1981 is rendered meaningless.

Moreover, in construing legislation this Court may consider the object sought to be obtained, the circumstances under which the legislation was enacted, and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023 (Supp.1987). It is presumed that the Legislature intended a just and reasonable result. Tex. Gov't Code Ann. § 311.021(3) (Supp.1987).

We find the construction proposed by appellees to be consistent with what we perceive to be the intent of the Legislature. Under the construction proposed by The University, if an employee entitled to the salary increase subsequently resigned and his position were filled by a new employee or by promotion of another existing employee, the salary increase mandated by the appropriations legislation would be inapplicable and the replacement employee would be paid at a lower rate. In essence, only a particular employee who occupied a particular position on August 31, 1981 would be entitled to the salary increase, and as employees changed positions or were promoted, the pay raises mandated by the appropriations legislation would be nullified. The University has offered no plausible explanation why the legislature would intend such an irrational result. It is apparent the legislature felt University personnel were underpaid and enacted legislation to remedy the problem. The University's proposed construction of the legislation would subvert legislative intent by limiting the remedy to an arbitrarily imposed subclassification of employees.

■ The affidavits submitted by The University in support of its interpretation do not alter our conclusion. We agree with The University that a long-standing departmental construction of a statute by officials charged with its enforcement should be given weight in construing ambiguous language. *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944). The University's affidavits, however, offer limited support for the construction it proposes and do not demonstrate a "long-standing" departmental construction of the acts. *See Guarantee Mutual Life Ins. Co. v. Harrison,* 358 S.W.2d 404, 408 (Tex.Civ.App. 1962, writ ref'd n.r.e.) (rule of construction does not apply where the evidence fails to show an affirmative long-standing administrative construction).

Two of the affidavits, from employees of the Comptroller and Legislative Budget Board, simply state that certain estimates of the fiscal impact of S.B. 1 and the General Appropriations Act were based upon the number of current employees (and, according to the employee from the Comptroller's office, "projected future payroll") and not upon "possible budgeted and unfilled positions." From these affidavits it might be inferred the affiants assumed a constant rate of pay for each position regardless of whether an employee held the position on August 31, 1981, thereby lending as much support to the appellees' contention as to The University's. Furthermore, the General Appropriations Act took effect on September 1, 1981 and plaintiffs filed suit only eight months later on May 3, 1982. The University has failed to show affirmatively that its interpretation of the legislation is "long-standing" and entitled to great weight.

The University's first and second points of error are overruled, and the judgment of the trial court is affirmed.