G. Charles **FRANKLIN**, et al.,
Appellants,

v.

Travis **DONOHO**, et al., Appellees.

No. 3-89-036-CV.

Court of Appeals of Texas,
Austin.

June 14, 1989.

Toni Hunter, Asst. Atty. Gen., Austin, for appellants.

Nell Hahn, Daves, Hahn & Levy, Austin, for appellees.

Before POWERS, GAMMAGE and JONES, JJ.

POWERS, Justice.

Thirteen individuals, responsible for the governance and administration of the University of Texas at Austin, appeal from an order of the district court which directs that a cause of action, brought against them by Travis Donoho, James Kieke, and

Cecilia E. Botero, be maintained as a class action under the provisions of Tex.R.Civ.P. 42.[1] Tex.Civ.Prac. & Rem.Code Ann. § 51.014(3) (Supp.1989). We will affirm the order.

## THE CONTROVERSY

To recover back wages, allegedly due them in their employment by the university, Donoho, Kieke, and Botero sued the university officials. They claim the back wages on an allegation that they were promoted into, or began employment in, a "position" to which this Court assigned a percentage-pay increase by our decision in *University of Texas at Austin v. Joki*, 735 S.W.2d 505 (Tex.App.1987, writ denied), wherein we construed sections 22(a) and 34 of the General Appropriations Act for fiscal year 1981–82. Nevertheless, they allege, the university withheld from them the increased pay that *Joki* required. The suit apparently seeks not to impose personal liability upon the officials, but a declaration and order requiring the officials to direct payment of the back wages.

In their petition, Donoho, Kieke, and Botero included allegations that they brought the cause of action as a class action under Rule 42, the class being composed of "all past and present employees of the University who were hired, promoted, transferred, or had positions reclassified after September 1, 1981," the effective date of the General Appropriations Act for fiscal year 1981–82.

Following an evidentiary hearing, the district court issued an order that the cause of action be maintained as a class action by Donoho and Kieke. The order delineates the class, in terms somewhat different from those alleged, as follows:

[A]ll employees of the University of Texas at Austin in positions covered by § 22(a) of the 1981 General Appropriations Act, who were hired or whose job titles changed between (and including) September 1, 1981, and August 31, 1983, into positions whose salary ranges were not increased by the amount specified in the 1981 Appropriations Act, excluding persons who worked in classified positions without an appointment during this period.

In the following language, the order determines affirmatively the "prerequisites" to a class action listed in section (a) of Rule 42:

&ast; &ast; &ast; &ast; &ast; &ast;

2. The class, as defined above, is so numerous that joinder of all members is impracticable.

3. There are questions of law or fact common to the class.

4. The claims or defenses of Travis Donoho and James Kieke, the class representatives, are typical of the claims or defenses of the class.

5. Travis Donoho and James Kieke will fairly and adequately protect the interests of the class.

&ast; &ast; &ast; &ast; &ast; &ast;

In addition, the order rests on the second of the four permissible grounds listed in section (b) of Rule 42:

&ast; &ast; &ast; &ast; &ast; &ast;

6. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corre-

---

1. The university officials are as follows: Robert B. Baldwin, Jack S. Blanton, Janie S. Briscoe, Jess Hay, Beryl Buckley Milburn, Shannon H. Ratliff, Tom B. Rhodes, Bill Roden, and Mario Yzaguirre, each of whom was alleged to be a member of the Board of Regents of the University of Texas System; and Peter T. Flawn and G. Charles Franklin, alleged to be the president and a vice-president, respectively, of the University of Texas at Austin.

It may be that not all of the named individuals currently occupy the office attributed to them in the allegations. We have, in this appeal, as-sumed they do because no issue has been made in that regard. If they do not, they could not lawfully exercise the powers of the offices attributed to them; and, in consequence, they could not comply with one aspect of the judgment requested by Donoho, Kieke, and Botero: an order requiring the named individuals to pay them and the members of the class the proper amount of wages. If any of the named individuals do not presently occupy the offices in question, we assume the matter will be resolved in any trial-court proceedings that follow our decision on appeal.

sponding declaratory relief with respect to the class as a whole.

\*    \*    \*    \*    \*    \*

None of the conclusions of law recited in the order are supported by findings of fact, and it appears from the record that none were requested. *See* Tex.R.App.P. 42(a) (trial judge need not file findings of fact and conclusions of law, in connection with appealable interlocutory orders, but may do so within 30 days after the "judgment" is signed); *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 553 (1953) (if findings of fact underlying appealable interlocutory order are desired, they "should" be requested under the provisions of Tex.R.Civ.P. 296 and the predecessor of appellate rule 42(a)); *see also* 4 McDonald Texas Civil Practice § 16.05, at 12–13 (rev. ed. 1984) (discussing findings of fact and conclusions of law in relation to appealable interlocutory orders).

In four points of error, the university officials contend the district court abused its discretion, as a matter of law, by issuing the class-action order.

### SCOPE OF REVIEW

The absence of findings of fact from the appellate record limits the scope of review we may apply in deciding the four points of error urged by the university officials. We should say a further word in that regard before proceeding with our analysis.

Findings of fact embody the trial judge's determinations on the controlling factual issues raised by the evidence. They are therefore an important part of the factual context in which the judge's ultimate decision was reached. Where, as here, the trial judge purports to exercise a power of discretion given him by law (Rule 42 in this instance), and his decision is assailed on appeal as being an "abuse of discretion," the factual context of his decision becomes crucial to the resulting issue to be determined on appeal: Did the trial judge act reasonably in the factual context in which his decision was reached? *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 937–41 (Tex.App.1987, no writ).

In appeals of this kind, it is axiomatic that every presumption is indulged in favor of the trial judge's decision, and the appellant must provide an appellate record sufficient to demonstrate that the decision does indeed carry the vice of reversible error. Where, as here, the record contains no specific findings of fact, but it does contain a statement of facts and the documents introduced in evidence, the appellate court is bound to presume the trial judge found every issuable factual proposition necessary to sustain his judgment, *provided:* (1) the proposition is one raised by the pleadings and supported by the evidence; and (2) the trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision. To prevail in this situation, the appellant may show that the undisputed evidence *negatives* one or more of the elements essential to the decision; or he may show that the appellee's pleadings omit one or more of the essential elements, and that the trial was confined to the pleadings. *See generally Lemons v. EMW Manufacturing Company,* 747 S.W.2d 372 (Tex.1988); *In the Interest of W.E.R.,* 669 S.W.2d 716 (Tex.1984); *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977); 4 McDonald, Texas Civil Practice § 16.10, at 35 (rev. ed. 1984).

In the present appeal, the university officials do not complain of any defect in their opponents' pleadings. We conclude the order below is presumptively correct, and that the undisputed facts do not negative any essential element of the district-court decision to order the class-action proceeding.

### PREDOMINANCE OF INDIVIDUAL ISSUES AND DIFFICULTIES OF MANAGEMENT

The university officials concede that *Joki* settled an essential question of law common to the class designated by the trial court—that employees entering a "position" after the effective date of the General Appropriations Act were entitled to the percentage-pay increase directed by the

Legislature, and the increase was not limited merely to those employees who occupied the "position" on the effective date. They also concede that another essential question of law, common to the class, remains to be decided in the district court—whether legislative consent is required before the cause of action may be maintained and relief obtained. They concede as well that there may be other questions of law remaining in the case, some of which may be common to the class.

Nevertheless, the officials argue, the evidence shows without serious dispute that irreducible *individual* questions of fact and law must be decided before relief can be given any employee. They refer in this respect to testimony and documents showing that many employees in fiscal year 1981–82 received merit or other pay increases that offset any *Joki* increase they may be entitled to receive;[2] that the duties associated with some "positions" were deleted, added or changed, in fiscal year 1981–82, with an attendant change in pay; that some "positions" were first created in fiscal year 1981–82, and could not for that reason have been within the legislative intent that constituted the rationale by which the *Joki* decision was reached; and other anomalies demonstrating variables applicable to each employee's past wages and the duties and pay associated with his "position." They argue that as many as 18,000 employees held appointments to employment "positions" in the applicable period, and which of them come within the *Joki* decision, and the net amount of back pay they are entitled to receive thereunder, will depend ultimately upon the decision of fact questions and law questions applicable to them alone.

On the foregoing theory, the university officials contend the class-action order issued from an abuse of discretion as a matter of law. *First,* they reason the district court could not reasonably have concluded, as it did in its order, that "there are ques-

tions of law or fact common to the class," in the words of the class-action "prerequisite" listed in section (a)(2) of Rule 42. We reject this argument because it is obvious, and the university officials conceded in oral argument, that there *are* questions of law common to the class—for example, the consent-to-sue question mentioned previously. The "prerequisite" is stated disjunctively, and it appears reasonable to conclude that the consent-to-sue issue is at least one common question of law best suited for class-action adjudication. The "prerequisite" does not require that *all* questions of law, or fact, be "common to the class." *See Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 255–257 (Tex.App.1986, no writ).

In all events, the naked conclusion of law expressed in the class-action order—that there *are* questions of law or fact common to the class—is not explained by any findings of fact or any subsidiary conclusions of law, but it is supported by the record and by the concessions mentioned previously. The conclusion of law is presumed to be valid, and it was the burden of the university officials to demonstrate the contrary. They have not.

*Second,* the university officials reason that the undisputed evidence demonstrates that the individual questions of fact and law will predominate at trial, and render the proceeding unmanageable as a class action. They refer in this connection to two considerations applicable to class actions that are grounded upon section (b)(4) of Rule 42. These provide as follows:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\*    \*    \*    \*    \*    \*

(4) the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual

---

2. We express no opinion on the question of law implied in the assumption that the merit or other increases offset any increase in pay required by *Joki.* It appears to be a question of law applicable, under the evidence adduced by

the university officials, to a large number of employees, who may yet be made a subclass, *see* Rule 42(d), a matter on which we also express no opinion.

members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: .... (D) the *difficulties* likely to be encountered in the management of the class action.

(Emphasis added). The ground for maintenance of a class action expressed in section (b)(4) is *not* applicable to the present case, strictly speaking. The district court did *not* purport to find the matters specified in that section. The class-action order rests instead upon another of the *alternate* grounds listed in section (b)—specifically it rests upon subsection (b)(2), as indicated in conclusion of law number six recited in the class-action order. Consequently, three of the decisions cited to us by the university officials are not applicable to the case. We refer to *Amoco Production Co. v. Hardy*, 628 S.W.2d 813 (Tex.App.1981, writ dism'd); *RSR Corporation v. Hayes*, 673 S.W.2d 928 (Tex.App.1984, writ dism'd w.o.j.); and *Life Insurance Company of Southwest v. Brister*, 722 S.W.2d 764 (Tex.App.1986, no writ). We believe, however, that the general thrust of the argument made by the university officials is proper to be considered as it bears on the judicial-economy factor underlying any class-action issue: Will a class-action furnish the most economical method for adjudicating a large number of related causes of action? *Wente*, 712 S.W.2d at 255; *see also* 1 Newberg on Class Actions § 4.22 (2d ed. 1985) (pointing out the "considerable overlap" in this respect between the two analogous sections of the federal class-action rule).

Assuming a premise that the resolution of many disputed individual issues will be required, and that this will be done through an adversary proceeding, it does not necessarily follow *under the applicable* law that the district court abused its discretion in issuing the class-action order. Section (d) of Rule 42 expressly provides for the maintenance of a class action with respect to particular issues, and for a division of the class into subclasses, in the district-court's discretion and in the appropriate circum-

stances. Moreover, the individual issues may be approached, managed, and resolved in a variety of ways that serve judicial economy *and* the interests of the parties. *See* 2 Newberg, *supra*, §§ 9.58–.64. For want of any showing in the record, we cannot know what the district court intends in this respect. In view of the possibilities left open to the district court under the applicable law, we cannot conclude, even if the undisputed evidence shows the existence of irreducible individual issues, that these will, ultimately and in fact, predominate over the common questions or prevent the efficient management of the proceedings. Consequently, we cannot conclude the trial court abused its discretion in the particular claimed by the university officials.

## DELAY IN PROCURING CLASS–ACTION ORDER

Subsection (c)(1) of Rule 42 requires that the district court determine "as soon as practicable," after commencement of the action and after hearing, whether it shall be maintained as a class action. In their appeal, the university officials contend the maximum period allowed under this subsection expired before the plaintiffs moved for the class-action order, and that the trial court abused its discretion, as a matter of law, by impliedly holding to the contrary.

The transcript shows the suit was filed August 25, 1985. It was dismissed for want of prosecution March 9, 1988, then reinstated April 26, 1988, on the motion of Donoho, Kieke, and Botero. On October 19, 1988, an evidentiary hearing was held on their motion for a class-action order, and on February 1, 1989, the district court signed the order. At the evidentiary hearing, Donoho testified that the plaintiffs delayed because: (1) they did not "want to go to the time and expense of undertaking another lawsuit, potentially much more expensive lawsuit, ... while the [*Joki*] case was still under appeal"; and (2) they hoped the university would voluntarily set up a mechanism giving relief to affected employees, after *Joki*, making unnecessary any class-action proceeding.

Because the district court issued the class-action order, it impliedly rejected a pleading by the university officials wherein they opposed the class-action request on the ground that the lapse of almost three years, between the filing of the suit and the class-action hearing, exceeded the period allowed by the phrase "as soon as practicable." Nothing in the order or elsewhere in the record explains the basis upon which the district court acted in that regard.

Donoho, Kieke, and Botero argue that the delay was reasonably justified in awaiting the outcome of the *Joki* test case because an opposite result in that case would have terminated their controversy; and, in any case, the university officials have not demonstrated any harm attributable to the delay. We believe the first part of this argument to be lacking in logic, strictly speaking, for the determinations necessary to a class-action order, under Rule 42, did not depend upon the final *result* of the *Joki* case—it would never determine whether there *existed* in the present case the "prerequisites" for a class-action listed in section (a), or any of the grounds for such an action listed in section (b). Consequently, further analysis of the record is required.

▇ The "as soon as practicable" requirement of section (c)(1) bears particularly upon the adequacy-of-representation factor mentioned therein, and the need for dispatch in notifying class members under section (c)(2). By its very phrasing, the requirement for a determination "as soon as practicable" implies a consideration of all the relevant circumstances. These include the detail in the pleadings; the amount of discovery pending, completed, and required; the nature of the suit; fairness to the parties; and judicial efficiency. *Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975) (construing the analogous provision in federal rule 23(c)(1)); *see also East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977) (one factor showing inadequacy of class representatives was their failure to move for class certification before trial, even assuming

that the district judge was obliged *on his own motion* to determine whether the action should proceed as a class action).

In the present case, the class representatives averred in bare conclusory terms the allegations necessary to a class action, in their original petition filed August 25, 1985. The university officials appeared by written answer in various pleadings thereafter, all of which contained a plea to the jurisdiction based upon the doctrine of governmental immunity from suit and from liability, absent legislative consent. On June 5, 1986, the university officials moved for summary judgment on that plea. A copy of the order overruling the motion is not in the appellate transcript; however, we were informed in oral argument that it was overruled at some point in the proceedings. On July 25, 1988, after the suit had been reinstated following its dismissal for want of prosecution, the university officials raised the same doctrine by a plea in abatement, alleging such was the proper plea in which to raise it. The record does not indicate that the officials moved for its determination before the plaintiffs moved for the class-action order. We were informed in oral argument that the plea in abatement has not yet been determined. Two *agreed* motions *are* contained in the appellate transcript, requesting the court to extend a court-imposed deadline, ultimately to October 1, 1988, to permit *both parties* further discovery relative to the matter of class certification.

The university officials contend they were prejudiced by the delay for two reasons: (1) that some 4,000 *former* employees might be subject to the *Joki* decision, raising difficult problems of giving them notice of the proceeding (we are unable to find that number in the record); and (2) should the university officials prevail ultimately on the class-action issue, they would nevertheless be deprived of a statute-of-limitations bar to the extent that any limitations period would have been tolled, as to the absent individuals, during the pendency of the present cause. We are not advised of the trial judge's reasoning in the matter because we have no findings of fact or conclusions of law that pertain to the mat-

ter. Because the class-action order is presumptively correct, we must assume the trial judge properly considered such asserted harm, that he properly evaluated it in light of all the relevant factors, and that he properly refused to give the asserted harm controlling effect. *See Landon,* 724 S.W.2d at 937–41.

■ We find no abuse of discretion. The trial judge might have reasoned, for example, that the university officials concurred in the need for delay since they requested additional discovery, relative to the class-action issue, extending to October 1988; or that their failure to make a record on the asserted harm indicated that it was not a significant factor; or that the same implication attended their failure to obtain an early determination of their government-immunity defense by a motion seeking determination of their plea in abatement. The record suggests other possible factors, but we cannot conclude in light of these factors that the trial judge abused his discretion as a matter of law.

### REPRESENTATIVE CAPACITY

■ In a final point of error, the university officials assail the district court's conclusions of law that Donoho and Kieke have *claims or defenses typical of those possessed by the class,* and that they will fairly and adequately protect the interest of the class. These conclusions of law refer, of course, to the prerequisites for a class action listed in Rule 42(a)(3) and (4).

The university officials argue that Donoho and Kieke, as a matter of law, cannot meet the standards of Rule 42(a)(3) and (4) because it is undisputed that they allowed dismissal of the suit for want of prosecution; they chose not to represent a segment of the class they originally designated (individuals employed by the university without an explicit "appointment"); they demonstrated no financial resources from which to pay the expected high cost of maintaining a class action; both were library assistants whereas the university has numerous classes of employees with far different duties; and Donoho is no longer employed by the university, being instead the "head" of a union that "represents" only a small number of university employees.

At the hearing on the class-action request, Donoho testified that his union was "financing" the litigation. Presumably, the district court believed the testimony for it is undisputed and nothing in the record indicates the contrary or a want of capacity in the union to pay for the litigation—matters upon which the university officials chose not to make an issue of fact in the evidentiary hearing.

We do not believe it material that Donoho and Kieke were library assistants, that Donoho is no longer employed by the university, or that he is now "head" of a union that "represents" only a small number of university employees. At least the relevance of these matters does not appear in the record, in light of the Rule 42(a)(3) prerequisite that the class representative have *claims* typical of those possessed by the class, or the Rule 42(a)(4) prerequisite that the representative fairly and adequately protect the interests of the class. On the other hand, the fact that they allowed dismissal of the action, for want of prosecution, and allowed the long lapse of time mentioned previously, *does* appear to bear upon their capacity to represent the class. Perhaps their exclusion of individuals not working under an explicit "appointment" does so as well, but we cannot say from the record that their action was unreasonable in that regard. It might, indeed, be viewed as a reasonable response in light of developments in the case following the filing of their original petition. Moreover, the dismissal of the action was explained, evidently, to the satisfaction of the trial judge, who ordered its reinstatement;[3] and the long lapse of time before moving for the class-action order might have been explained to his satisfaction for the several

---

3. In requesting reinstatement, counsel for Donoho, Kieke, and Botero attributed the dismissal to her having failed to receive a notice of the district court's intention to dismiss the cause, owing to the fact that she had changed the location of her office.

**316**

reasons mentioned above in connection with another point of error.

Again, we are not informed of the trial judge's reasoning on these matters—for example, the relative weight he assigned to all of the factors mentioned above—because we have no findings of fact or conclusions of law. The record suggests a reasonable basis for concluding as he did on the issue of adequate representation. Consequently, we cannot conclude that he abused his discretion as a matter of law. We hold accordingly.

Finding no error as assigned by the university officials, we affirm the order below.