cv2-064 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-064-CV






STATE OF TEXAS, PUBLIC UTILITY COMMISSION OF TEXAS, 


AND HOUSTON LIGHTING & POWER COMPANY,



 APPELLANTS




vs.






OFFICE OF PUBLIC UTILITY COUNSEL,



 APPELLEES





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 411,593, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING 



 





 This appeal arises from a suit for judicial review of an order by the Public Utility
Commission of Texas (the "Commission") granting a rate-change petition submitted by Houston
Lighting & Power Company ("HL&P"). Following extensive discovery and hearings, the
Commission issued a final order under docket numbers 6765, 6766, and 6930 granting HL&P's
petition. In separate causes, the Office of the Public Utility Counsel (the "OPUC"), HL&P, and
the State of Texas (the "State") (1) sought judicial review of the Commission's order in district court. 
The district court consolidated the causes and affirmed the order in all respects except for the
Commission's decision to include construction work in progress ("CWIP") (2) in HL&P's rate base. 
Both HL&P and the Commission appeal the district court's reversal of the Commission's order
allowing inclusion of CWIP. In addition, the State appeals the district court's decision affirming
the Commission's approval of HL&P's proposed late-payment penalty. We will affirm in part and
reverse and remand in part.



BACKGROUND AND PROCEDURAL HISTORY


 This case originated when HL&P filed a system-wide application on March 18,
1986, to increase its rates in the unincorporated areas that it serves. The Commission styled
HL&P's application as docket number 6765 and later consolidated it with docket numbers 6766
and 6960. Docket numbers 6766 and 6960 concerned, respectively, HL&P's proposed interim
accounting treatment for Limestone Unit I and a citizen's appeal of the City of Houston's approval
of HL&P's request to increase its rates within Houston's corporate limits. The Commission held
hearings under these docket numbers from June 30, 1986, through August 7, 1986. Based on
these hearings and a 422-page examiner's report, the Commission issued a final order on
November 14, 1986, adopting most of the findings of fact and conclusions of law contained in the
examiner's report. The order approved HL&P's rate-increase request, albeit at levels lower than
those the utility requested, and included authorization for the inclusion of $678,072,000 of CWIP
in HL&P's rate base. The order also included a three percent late payment penalty on non-residential customers. (3)

 The Commission's order authorized the inclusion of $678,072,000 of CWIP in
HL&P's rate base pursuant to section 41(a) of the Public Utility Regulatory Act. (4) The
Commission took a three-tiered approach in determining whether HL&P was eligible to receive
a CWIP allowance pursuant to section 41(a). (5) First, the Commission determined whether HL&P
met a "threshold test" of "exceptional circumstances," which controlled whether it was eligible
for any CWIP at all. (6) Second, the Commission calculated the amount of CWIP necessary to
preserve the financial integrity of the utility. (7) Finally, the Commission determined that none of
this CWIP allowance included major projects that were inefficiently or imprudently planned or
managed.

 The Commission's order also adopted findings of fact approving HL&P's request
for a three-percent late-payment penalty for nonresidential customers. (8) This approval was
pursuant to PUC Substantive Rule section 23.45(b), which authorizes utilities to assess a penalty,
not to exceed five percent, on delinquent nonresidential bills. (9) Based on this provision, the
Commission concluded that HL&P's request for the late payment penalty was reasonable and
approved the request in its final order.

 In separate causes, HL&P, the OPUC, and the State sought judicial review of the
Commission's order pursuant to section 69 of PURA and section 19 of the Administrative
Procedure and Texas Register Act. (10) In its petition to the district court, the OPUC objected to the
Commission's decision to include $678,072,000 of CWIP in HL&P's rate base, in addition to
other objections presented during the hearings. The State sought reversal of the Commission's
approval of HL&P's late payment penalty as applied to state agencies. HL&P's action sought to
overturn those portions of the Commission's order which did not grant the full rate adjustment
it had requested. On May 11, 1990, the district court held a hearing on consolidation and
concluded that these causes involved common questions of fact and law, and ordered that the
causes be consolidated for all purposes under cause number 411,593.

 After considering the parties' briefs and arguments, the district court rendered a
judgment upholding all portions of the Commission's final order except the Commission's
authorization of the inclusion of CWIP. The district court held that the Commission misapplied
the threshold test of section 41(a) by failing to require a showing of "exceptional circumstances." 
The district court found that, in place of a showing of exceptional circumstances, the Commission
merely required HL&P to show circumstances that deviated from the industry norm.



DISCUSSION



 1.  Reversal of the Commission's CWIP Decision

 In three points of error, the Commission and HL&P contend that the district court
erred in reversing the Commission's approval of HL&P's request for the inclusion of CWIP in
its rate base. Both parties argue on appeal that the Commission fully complied with PURA section
41(a), and that there is substantial evidence supporting the Commission's decision.

 As a preliminary matter, we will consider HL&P's first point of error, which
contends that the district court improperly construed section 41(a) as requiring a threshold inquiry
into whether exceptional circumstances justify the inclusion of CWIP in a utility's rate base. 
HL&P argues that the language of section 41(a) does not establish a threshold requirement of
"exceptional circumstances" independent from the financial integrity and prudent management
requirements expressly stated in the statute. HL&P suggests that section 41(a) requires only a
two-tier inquiry: (1) whether CWIP is necessary to maintain the utility's financial integrity, and
(2) whether the utility's major projects were prudently planned and managed. We disagree with
this construction of the statute.

 The legislative history of section 41(a) and the Commission's own substantive rules
support the existence of an independent threshold inquiry of exceptional circumstances. Prior to
the legislature's 1983 amendment of section 41(a), the sole requirement for the inclusion of CWIP
was a showing by the utility that the CWIP allowance was necessary to maintain the utility's
financial integrity. (11) As amended, section 41(a) designates the inclusion of CWIP as an
exceptional remedy. The legislature retained the previous financial integrity test, but added an
additional requirement excluding any CWIP allowance for projects imprudently planned or
managed. (12) The floor debate on this amendment clearly reveals that the legislature's intent was
to prevent the Commission from authorizing CWIP allowances as a matter of course, and to
restrict CWIP awards to only those cases where the utility could demonstrate circumstances
justifying an exceptional form of rate relief. (13) HL&P's construction of section 41(a) deprives the
language added by the legislature in 1983 of any effect and defeats the legislature's purpose in
amending the statute. Such a construction of section 41(a) runs counter to the maxim that every
word of a statute must be treated as if it were used for a purpose and must be given effect if
possible. Univ. of Tex. at Austin v. Joki, 735 S.W.2d 505, 508 (Tex. App.-- Austin 1987, writ
denied).

 HL&P's construction of section 41(a) is also contrary to the substantive rule
promulgated by the Commission in response to the legislature's 1983 amendment of the section. 
PUC Substantive Rule section 23.21(c)(2)(D), (14) which serves as the basis of the Commission's
three-tiered approach to determining whether a CWIP allowance should be granted, states that
CWIP may be granted only under exceptional circumstances. The Commission's adoption of the
threshold exceptional-circumstances requirement in agency rules designed to implement the
requirements of section 41(a) weakens HL&P's argument that the statute does not require an
independent inquiry into whether exceptional circumstances warrant a CWIP allowance. 
Therefore, we conclude that the current version of section 41(a) requires a threshold showing of
exceptional circumstances, in addition to the requirements of financial integrity and prudent
management, and we accordingly overrule HL&P's first point of error.

 We now turn to the issue of whether the criteria that the Commission used in this
threshold test, as part of its three-tier CWIP analysis, comported with the requirements of section
41(a). The Commission based its threshold finding of exceptional circumstances on an analysis
of selected financial indicators. The Commission examined HL&P's ratio of construction to net
plant, cash-flow coverage of dividends, and the utility's bond rating. (15) The Commission compared
these statistics to national averages for electric utilities, and concluded that HL&P's construction
to net plant ratio and its cash-flow coverage deviated from industry averages. (16) Based on this
analysis, the Commission concluded that the threshold requirement of exceptional circumstances
had been met and proceeded with the remaining two tiers of its analysis.

 In its sole point of error, the Commission argues that its application of the threshold
exceptional-circumstances test comported with the requirements of section 41(a). The OPUC
contends, however, that the Commission's criteria do not require a showing of exceptional
circumstances, as was the legislature's intent when it amended section 41(a). At most, according
to the OPUC, these criteria show only that HL&P currently has a large construction program in
progress. The OPUC argues that these criteria are based on the same type of financial indicators
used to assess financial integrity under the old version of section 41(a) and, thus, reflect a
"business as usual" approach by the Commission that ignores the legislature's intent to restrict the
authorization of CWIP to cases involving exceptional circumstances. We disagree.

 A reviewing court should afford the agency discretion in interpreting and executing
its statutory duties, especially in cases where statutory requirements are ambiguous or ill-defined. 
Southwestern Bell Tel. Co. v. Public Util. Comm'n, 745 S.W.2d 918, 923-24 (Tex.App.--Austin
1988, writ denied). We have stated that the Commission's construction of PURA should be
followed, provided this construction is reasonable and does not contradict the plain language of
the statute. Id.; Southwestern Bell Tel. Co. v. Public Util. Comm'n, 735 S.W.2d 663 (Tex.
App.--Austin 1987, no writ). 

 The fact that the Commission utilized financial indicators that reflected HL&P's
financial integrity does not mean that these variables are inappropriate criteria for deciding
whether the utility has demonstrated exceptional circumstances. In fact, any financial indicator
used by the Commission would in some way bear on HL&P's financial integrity. Yet, it is
difficult to conceive of any satisfactory alternative to using financial indicators in determining
whether there are exceptional circumstances. (17) Similarly, the OPUC's argument that the
Commission's criteria show nothing more than a large construction program fails to consider that,
in many cases, a large construction program could reasonably be deemed to be "exceptional" for
the purposes of including CWIP in a utility's rate base. The Commission's task is further
complicated by the necessity of applying these statutory tests in the technically complex
environment of electric utilities. (18) Accordingly, we conclude that the Commission's criteria
defining exceptional circumstances are reasonable and do not contradict the plain meaning of
section 41(a). We therefore sustain the Commission's sole point of error.

 HL&P's last point of error asserts that the Commission's CWIP decision is
supported by substantial evidence. The substantial-evidence test is the appropriate standard of
review for assessing the evidentiary foundation of an agency's action. United Resources
Recovery, Inc. v. Texas Water Comm'n, 815 S.W.2d 797, 801 (Tex. App.--Austin 1991, writ
denied). This rule requires a reviewing court to determine whether the evidence as a whole is
such that reasonable minds could have reached the same conclusion the agency must have reached
in order to take the disputed action. Texas State Bd. of Dental Examiners v. Sizemore, 759
S.W.2d 114, 116 (Tex. 1988), cert. denied, 490 U.S. 1080 (1989). However, this standard of
review should be distinguished from the district court's inquiry in this cause. The district court's
judgment addressed the Commission's selection of criteria in applying the first tier of its three-tier
CWIP analysis and, therefore, never reached the question of whether the second and third tier of
the Commission's CWIP decision was supported by substantial evidence. Accordingly, we
overrule HL&P's final point of error and remand the cause to the district court for a substantial-evidence review of (1) the Commission's decision as to the amount of CWIP authorized and (2)
the Commission's conclusion that none of the authorized CWIP allowance represented
construction projects that were inefficiently or imprudently planned or managed.


 

2.  Late Payment Penalty

 In seven points of error, the State complains of the district court's decision affirming the
Commission's authorization for HL&P to assess a three-percent late-payment penalty. In the past,
we have stated that the Commission has discretion in designing rate structures as long as the rate
structure is just and reasonable. Public Util. Comm'n v. Houston Lighting & Power Co., 715
S.W.2d 98, 103-04 (Tex. App.--Austin 1986) rev'd on other grounds, 748 S.W.2d 439 (Tex.
1988); Texas Alarm & Signal Ass'n v. Public Util. Comm'n, 603 S.W.2d 766, 772 (Tex. 1980). 
This degree of discretion reflects the fact that rate design is a complex problem that involves the
consideration of numerous factors. Texas Alarm & Signal Ass'n, 603 S.W.2d at 772.

 In its first three points of error, the State argues that the Commission lacks the
authority to approve a late-payment penalty that is unrelated to costs. We disagree. The standard
set out in Texas Alarm & Signal Ass'n allows the Commission to consider a range of factors, in
addition to cost, when determining the proper rate structure. Id. Thus, as long as the rate
structure as a whole is just and reasonable, the Commission has the authority to permit HL&P to
assess a late-payment penalty. Consequently, we overrule the State's first three points of error.

 The State's fourth, fifth, and sixth points of error essentially complain of the
Commission's finding that HL&P's late-payment penalty is reasonable. The State argues that state
agencies must comply with complex accounting procedures before they may pay vendors, and that
these procedures create delays in paying utility bills. Thus, according to the State, the provisions
of HL&P's late-payment penalty would unfairly subject the State to excessive late-payment
penalties. We disagree. The Commission provided evidence that late-payment penalties serve an
important role by creating an incentive for timely payment. Based on the record and arguments
of the parties, we believe that there is substantial evidence supporting the reasonableness of the
late-payment penalty. The fact that the late-payment penalty might place some burden on state
agencies is not controlling as long as the penalty has a reasonable basis. (19) We overrule the State's
fourth, fifth, and sixth points of error.

 The State's seventh and final point of error asks us to reverse the district court's
denial of the State's request for a declaratory judgment to the effect that the Commission's
approval of HL&P's late payment penalty interferes or threatens to interfere with the State's legal
rights and duties. For the reasons set out above, we conclude that the Commission's order was
just and reasonable and, therefore, overrule the State's final point of error.



CONCLUSION


 We reverse that portion of the district court's order reversing the Commission's
inclusion of CWIP in HL&P's rate base and we remand this portion of the cause to the district
court for a substantial-evidence review of (1) the Commission's decision as to the amount of
CWIP authorized, and (2) the Commission's conclusion that none of the authorized CWIP
allowance represented construction projects that were inefficiently or imprudently planned or
managed. We affirm the remainder of the district court's judgment.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed in Part; Reversed and Remanded in Part

Filed: March 10, 1993

[Publish]

1.   The State of Texas brought suit on behalf of Texas state agencies.
2.   CWIP represents a utility's investment in the planning and construction of facilities
which are yet to be completed and placed in service. The Commission usually sets a
utility's maximum allowable return based on the utility's rate base, which primarily
consists of invested capital in facilities currently in use. Under exceptional circumstances,
however, the Commission is empowered to authorize the inclusion of part of a utility's
CWIP balance in its rate base. This is essentially a form of rate relief because it allows
the utility to collect additional revenue without a concomitant increase of facilities in
service.
3.   The Commission issued a clarification order on December 2, 1986; however, this
order did not make substantive changes to the November order.
4.   [4] Public Utility Regulatory Act ("PURA"), Tex. Rev. Civ. Stat. Ann. art. 1446c (West
Supp. 1993). PURA is the Commission's enabling statute.
5.   [5]  These three stages in the Commission's deliberation reflect the requirements of PUC
Substantive Rule § 23.21(c)(2)(D), which implements PURA § 41(a).
6.   [6]  In finding of fact no. 45 and conclusion of law no. 15, the Commission ruled that
HL&P met this threshold test and, therefore, was eligible for the inclusion of some CWIP in
its rate base.
7.   [7]  In findings of fact nos. 198 and 199 and conclusions of law nos. 38 and 39, the
Commission determined that 32% of HL&P's total CWIP balance, or $678,072,000, was
necessary to maintain the utility's financial integrity.
8.   [8]  Findings of fact nos. 198 and 199; conclusions of law nos. 38 and 39.
9.   [9] 16 Tex. Admin. Code § 23.45(b).
10.   Administrative Procedure and Texas Register Act ("APTRA"), Tex. Rev. Civ. Stat.
Ann. art. 6252-13a (West Supp. 1993).
11.   The pre-amendment text of PURA § 41(a) stated the following in regard to CWIP:


Utility rates shall be based upon the adjusted value of property used by and
useful to the public utility in providing service including where necessary to
the financial integrity of the utility construction work in progress at cost as
recorded on the books of the utility.


Act of June 21, 1975, 64th Leg., R.S., ch. 721,§ 41(a), 1975 Tex. Gen. Laws 2341 

(amended 1983)(current version at Tex. Rev. Civ. Stat. Ann. art. 1446c (West Supp.
1993)).
12.   The amended version of PURA § 41(a) states:


The inclusion of construction work in progress is an exceptional form of
rate relief to be granted only upon the demonstration by the utility that
such inclusion is necessary to the financial integrity of the utility.
Construction work in progress shall not be included in the rate base for
major projects under construction to the extent that such projects have been
inefficiently or imprudently planned or managed.


Tex. Civ. Stat. Ann. art. 1446c (West 1993).
13.   Senator Caperton, the sponsor of the amendment, stated the purpose of the
amendment as follows:


[CWIP] is going to be treated as an exceptional form of rate relief . . . it is
not to be parcelled out as a matter of course. . . . It is indeed an unusual
form of rate relief that a utility company must go to the regulatory
authority and justify.


Debate on Tex. S.B. 232 on the Floor of the Senate, 68th Leg., R.S. 9 (April 6, 1983)
(transcript available from Senate Staff Services Office).
14.   16 Tex. Admin. Code § 23.21(c)(2)(D).
15.   During the hearings, Commission staff explained that the net construction ratio and
cash flow coverage ratio are key statistics used by the financial community in assessing
the financial condition of a utility. 
16.   HL&P's construction to net plant ratio was 30.5%, compared with an industry
average of 22.01%, and its cashflow coverage of dividends 2.1X, compared to an industry
average of 2.6X.
17.   In fact, during oral argument, the OPUC's counsel had no response when asked to
define the criteria he thought would be more appropriate to show exceptional
circumstances.
18.   The examiner's report hints at the complexity of the problem. At one point, the
report states that the criteria and indicators used in the Commission's CWIP analysis
often must be varied from utility to utility because of the complex differences in financial
and operating conditions among utilities.
19.   Two portions of the record suggest that the penalty was not unreasonably
burdensome. First, in response to the State's concern about the penalty, the Commission
created a special exception under which state agencies would not be subject to the penalty
if they paid their bills within 30 days after the bills were sent. At the time, the grace
period for other commercial and industrial customers was 16 days. Second, the evidence
before the Commission indicated that state agencies were continuously changing their
procedures in order to streamline the bill- payment process, and that some state agencies
served by HL&P could actually meet the stricter 16-day payment limits if necessary.