# BRYAN *v.* HENDERSON.

## (*Knoxville.* October 12, 1889.)

1. CHANCERY PLEADINGS AND PRACTICE. *Demurrer. Amendment. Waiver.*

Demurrer is not waived, where, after it was overruled, the complainant amended his bill without curing the defects pointed out, and the defendant answered the bill as amended without renewing his demurrer.

2. PRINCIPAL AND SURETY. *Release of surety. Subrogation.*

Creditor's act does not operate to release sureties for a debt, where, with consent of their principal, he disposed of securities held in common for that and other debts due him from such principal, and applied the entire proceeds in payment of the latter debts. The sureties, after having paid their liability, would not, in such case, have been entitled to subrogation as against the creditor's other debts.

Cases cited and approved: Bond *v.* Ray, 5 Hum., 492; Renegar *v.* Thompson, 1 Lea, 457; Allen *v.* Henley, 2 Lea, 141; Greenlaw *v.* Pettitt, 87 Tenn., 480; Gilliam *v.* McCormack, 85 Tenn., 597.

3. SAME. *Partners become such inter sese, when.*

Where one partner agrees with his co-partners to assume and pay the firm debts, he becomes principal and they merely sureties for such debts as among themselves, but all remain liable to the firm creditors.

4. EQUITY. *Rights of holder of legal title to lands.*

Holder of legal title to lands will not be required to convey to the equitable owner until the latter has discharged all indebtedness growing out of the transaction, and relieved him from all liability touching same.

Cases cited and approved: Williams *v.* Love, 2 Head, 79; Mitchell *v.* Brown, 6 Cold., 509.

---

## FROM SEVIER.

---

Appeal from Chancery Court of Sevier County. H. R. GIBSON, Ch.

MULLENDORE & PENLAND and WASHBURN & TEMPLETON for Bryan.

PICKLE, TURNER & McMAHAN for Henderson.

LURTON, J. This is a bill filed to perpetually enjoin a judgment at law. A demurrer to the jurisdiction of the Court to entertain the bill upon the facts alleged was overruled. Subsequently the bill was amended upon leave granted in the decree overruling demurrer. The defendant, instead of again demurring, answered the bill as amended, denying the facts upon which relief was sought. The action of the Court in overruling the demurrer to the original bill is now assigned as error. The demurrer ought to have been sustained. It is insisted, however, that, inasmuch as the bill was subsequently amended, the failure of defendant to demur to the amended bill is a waiver of jurisdiction. This would doubtless be true if the amendment had cured the defective bill. But in this case the amendment did not improve the bill. Treating the amendment as part of the original bill, the demurrer was well taken. In view of the fact that the amendment did not cure the fault pointed out by the demurrer, we would probably be justified in now reversing the action of the Court in overruling the demurrer, notwithstanding the subsequent amendment, it being, in effect, no amendment at all. In the view we take of the merits of the bill we, however, find it un-

necessary to rest our decision upon this question. The facts as we find them which are necessary to be stated, are these: The defendant, J. T. Henderson, one George Lee, and J. C. Bryan were partners in a small village store. The firm owned a business house in which they carried on business. They also owned a stock of general merchandise and some book accounts. They were indebted for goods bought for the use of the business in about the sum of $1,000. Henderson and Lee sold out their respective interests in the firm assets, including the realty, to their co-partner, J. C. Bryan. The terms of the sale were that Bryan should pay to each of them the sum of $425, and assume all the liabilities of the firm. The trade, as stated by the witnesses, was a "lumping" trade of all the assets, in consideration that the purchaser would assume and pay all the firm indebtedness, and pay, in addition, to each of them the sum of $425. The legal title to the firm realty was in the selling partners, Henderson and Lee, and they gave to Bryan a bond in the sum of $1,650, conditioned to be void when they should make a good warranty deed to the store-house and lot. Separate notes were executed for the share of the purchase-money due to each of the vendors. Complainants became sureties upon these notes; and, judgment having been obtained at law upon the notes payable to Defendant Henderson, they now seek to be relieved from liability. J. C. Bryan did not pay off the firm indebtedness assumed by him. In

consequence of this, Henderson and Lee, who were still liable, agreed to repurchase the firm realty, and to pay for it the sum of $712, the purchase-money to be applied in payment of such of the outstanding debts assumed by Bryan as he should designate. Upon the payment by them of this ·sum, in debts designated by Bryan, he surrendered his bond for title, and it was canceled—never having been registered. This still left about $300 of firm debts unpaid. Bryan remained the owner of the remnant of the old stock and of the book accounts, and still liable upon the notes executed to Henderson and Lee, and still bound to pay off the remainder of the firm debts assumed by him. The contention of complainants that these notes were alone given for the purchase-money of the house and lot, and that the rescission of the sale operates as a payment of the notes, is unfounded in fact. The notes represented the money to be paid for the entire firm assets, in addition to which the purchaser was to assume and pay off the firm indebtedness. The charge in the bill that when the title bond was surrendered, it was agreed that these notes should be canceled is likewise unsupported by any competent evidence. It is next insisted that the re-acquirement by the vendors of the real estate, which, at least in part, was to be paid for by the notes on which complainants are bound, operates as an exoneration to the extent that the real estate forms a part of the consideration for the notes. It is undoubted law

that if a creditor does any act which operates to release or discharge any lien or security which he holds from the principal debtor, to the prejudice or injury of sureties, that the sureties will be exonerated to the extent to which they have been injured. *Bond* v. *Ray*, 5 Hum., 492; *Renegar* v. *Thompson*, 1 Lea, 457; *Allen* v. *Henley*, 2 Lea, 141.

This is upon the ground that sureties paying a debt are entitled to be subrogated to any lien or securities belonging to the principal debtor and held by the creditor, for the security of the debt paid by them. If, therefore, the creditor has released such lien, or returned such securities, or applied, or permitted their application, to the payment of other debts of the debtor, he has acted in bad faith, and the sureties are justly entitled to claim exoneration to the extent that they have been defeated in their right to subrogation. How far does this equitable principle operate to release these complainants? The title bond is not conditioned to make deed upon payment of the notes executed. Indeed, there are no conditions named upon which deed is to be made. It does recite that the property which they bind themselves to convey has been sold for $825, being the aggregate of the notes executed to both Henderson and Lee, after deducting their respective accounts due the firm. This recital is not conclusive as to the consideration; and, as before stated, the real consideration of the sale was not only the payment of $825, but the payment, in addition, of all the out-

standing indebtedness of the firm. The vendors testify that they retained the legal title to indemnify themselves against the firm debts assumed as a part of the consideration for the sale. As to these debts, their real relation to Bryan was that of sureties, they being still liable to such creditors, notwithstanding their assumption by him. The proof does not, however, show that there was any agreement with Bryan that the legal title should be retained as a security for his performance of this part of his contract. Indeed, there seems to have been no express agreement as to when the legal title should be conveyed, or for what purpose it was withheld. But in a court of equity no express agreement was necessary. The rule is that where one holds the legal title he will not be required to convey it to the equitable owner until the latter has discharged all indebtedness growing out of the transaction, and relieved him from all liability for him. *Williams* v. *Love,* 2 Head, 79; *Mitchell* v. *Brown,* 6 Cold., 509. It cannot be contended that Bryan could have compelled the conveyance of the legal title until he had relieved the defendant from all liability upon the firm debts, which the former, as a part consideration for the purchase, had assumed to pay. Neither would the complainants, upon the payment by them of these notes, have been entitled to be subrogated to the lien of Henderson and Lee upon this property, so long as the latter were still liable as sureties of the purchasing partner upon the firm debts assumed

by him. Their equity to be exonerated from this liability for J. C. Bryan was superior to the equity of complainants as his sureties upon these notes, inasmuch as the assumption of these debts was just as much a part of the purchase-price of these lots as the notes upon which complainants were bound as sureties. Concerning the doctrine of subrogation, this Court said, in the late case of *Greenlaw* v. *Pettitt*, "that the right of subrogation is a pure equity, and is allowed only in relief of a meritorious creditor, and only when and where it does not conflict with the legal or equitable rights of other creditors of the common debtor." 87 Tenn., 480. See also 3 Pom. Eq., 469; *Gilliam* v. *McCormack*, 85 Tenn., 597. The property was re-acquired by defendants for a full price, and this value applied upon the firm debts. It follows, therefore, that no right or equity which complainants had in or to this property has been impaired or prejudiced by the resale of it to the original vendors. They have applied it in payment of the purchase-price at its full value, leaving these notes still unpaid. They are not entitled to any relief whatever by reason of this transaction.

The decree of the Chancellor must be reversed and the bill dismissed with all costs.