Eugene A. BRODHEAD as Receiver
for Mission National Insurance
Company, Appellant,

v.

Donald DODGIN and Peggy
J. Dodgin, Appellees.

No. 3-90-129-CV.

Court of Appeals of Texas,
Austin.

Dec. 11, 1991.

Rehearing Overruled Jan. 22, 1992.

Michael B. Newman, Houston, for appellant.

Teris Brantley, Robert J. Wilson & Associates, Inc., Burleson, for appellees.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Donald and Peggy Dodgin (the Dodgins) brought this suit against Eugene Brodhead, receiver for Mission National Insurance Company (the Receiver), to recover the maximum $100,000 per-person limit provided under the Property and Casualty Insurance Guaranty Act (The Guaranty Fund). Tex.Ins.Code Ann. art. 21.28–C (1981 & Supp.1991). Following a jury verdict and district court judgment favorable to the Dodgins, the Receiver files this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit is a sign of the economic times in Texas. On June 16, 1983, the Dodgins received serious, permanent and disabling injuries during a collision between their pickup truck and a tractor-trailer rig being operated by Permit Haulers, Inc. (Permit Haulers). As a result of the accident, the Dodgins filed suit in Tarrant County, Texas, against Permit Haulers, its driver, and the lessor of the tractor-trailer rig. At the time of the accident, Permit Haulers had a primary insurance policy of one million dollars with Early American Insurance Company (Early American) and an umbrella excess insurance policy with Mission National Insurance Company (Mission National) of two million dollars, apparently affording the Dodgins three million dollars of insurance coverage as a potential source of recovery.

In January 1985, the State of Texas placed Early American into receivership. Prior to the receivership, Permit Haulers was defended by counsel employed by Early American in the Tarrant County suit. After receivership, the Tarrant County district court allowed counsel for Permit Haulers to withdraw, and set the cause for trial in May 1985. Prior to trial, Permit Haulers and the Dodgins compromised and settled the Tarrant County litigation. Under the agreements, the Dodgins took a three-million-dollar judgment against Permit Haulers and, in exchange, gave Permit Haulers a covenant not to execute, instead agreeing to pursue any insurance proceeds that might be available. In May 1986, the Dodgins settled with the receiver for Early American for $100,000 and executed a release.

In February 1987, Mission National was placed into receivership and the Dodgins each filed their claims with the Receiver for Mission National. The Receiver rejected these claims. The Dodgins then filed suit in the 250th District Court of Travis County, Texas, the court where the receivership was pending, in order to appeal the Receiver's rejection of their claims. The Receiver filed a motion to dismiss the claims because the Dodgins had filed the lawsuit under the same cause number as the primary receivership case, an intervention prohibited under the insurance code. The trial court initially dismissed the lawsuit. However, on the Dodgins' motion, the district court reinstated the suit, severed it from the main receivership case, and gave it a separate cause number.

By agreement of the parties, some of the issues in this cause were tried before a jury and some were tried to the court. The personal injury liability and damage issues between the Dodgins and Permit Haulers' truck driver were submitted to the jury. All other issues, including the effect of the prior judgment (which the Receiver contended was obtained by fraud and collusion), the affirmative defense of release, the construction of the Mission National insurance policy, and the application of the Guaranty Fund, were determined by the court.

On the liability and damage issues, the jury returned a $1,935,000 verdict favoring the Dodgins. The district court then found that the prior three-million-dollar Tarrant County judgment was not collusive. The district court next rendered judgment in favor of Donald and Peggy Dodgin, each individually, for the $100,000 statutory maximum provided by the Guaranty Fund. The court further assessed prejudgment interest and court costs against the Receiver. It is from this judgment that the Receiver now appeals.

## DISCUSSION AND HOLDING

The Receiver brings seven points of error complaining that the district court erred: (1) in not dismissing the Dodgins' claim because the original lawsuit attempted to intervene in the primary receivership action, which is prohibited by the receivership statute; (2) in not finding that the release the Dodgins gave to the receiver for Early American barred any further recovery; (3) in assessing a recovery against an umbrella excess insurance carrier when the primary insurance limits were not paid; (4) in finding the Mission National policy to be a liability policy rather than an indemnity policy; (5) in applying a $100,000 per person statutory cap on damages as provided by the Guaranty Fund rather than a $50,000 per person cap as provided by the pre–1985 statute; (6) in awarding prejudgment interest and court costs in the final judgment; and, finally, (7) in not finding that the jury's damage award was excessive.

### 1. *Dismissal*

■ In his first point of error, the Receiver contends that the trial court erred in reinstating the Dodgins' lawsuit because it was not filed as a separate action as required by the Texas Insurance Code. The Code provides that, following rejection by the receiver, claims must be brought "in the same court in which the delinquency proceeding is pending within three months after service of the notice of rejection." Tex.Ins.Code Ann. art. 21.28, § 3(h). "A claimant's attempt to appeal the action of the receiver by way of intervening into the delinquency proceeding does not comply with this subsection [of the Code]." *Id.*

When the Dodgins received the notice of rejection by the Receiver on July 1, 1988, they had three months, or until October 1, 1988, to perfect their appeal. The Dodgins did in fact file their case in the 250th District Court of Travis County within the prescribed time period. However, their lawsuit was filed under the same cause number as the delinquency proceeding and thus became an intervention which is not permitted under the Code.

The Receiver moved for dismissal of the Dodgins' action because it was filed in the delinquency proceeding. The trial court, without a hearing and upon the belief that the motion was uncontested, dismissed the cause on December 2, 1988. However, upon motion of the Dodgins, and after hearing and due consideration, the district court reinstated the case, assigning it a separate cause number from the delinquency proceeding. The Receiver argues that the district court erred in reinstating the Dodgins' case. He asserts that since the Code section was not followed, the Dodgins' case should have been dismissed with prejudice.

We must first determine whether the Code provision presents a question of jurisdiction or of venue. This Court has previously decided that issue adversely to the Receiver's position in *Whitson v. Harris,* 792 S.W.2d 206 (Tex.App.1990, writ denied).

In *Whitson,* the receiver had rejected the claims of John and Freeda Whitson. The

Whitsons appealed this action by filing suit in Gray County, Texas. The receiver filed a motion to transfer the case to Travis County. The trial court entered an order transferring the case and this action was upheld by the Seventh Court of Appeals in *Whitson v. Harris*, 682 S.W.2d 423 (Tex. App.1984, no writ). After transfer, the receiver moved for summary judgment on the basis that the lawsuit had not been filed originally in the court where the delinquency proceeding was pending. The receiver contended that a violation of article 21.28 § 3(h) of the Code was jurisdictional and therefore the claimants' suit should have been dismissed with prejudice. This Court in the second *Whitson* appeal rejected the receiver's contention holding that the section of the Code in question was not jurisdictional but rather a venue provision:

> Article 21.28 contains several provisions that set forth venue for both delinquency and other ancillary proceedings. Section 2(i) provides that the exclusive venue of delinquency proceedings shall be in Travis County. Section 4(h) provides that the exclusive venue for all proceedings instituted by or against the receiver after commencement of delinquency proceedings shall be in the receivership court.
>
> \*     \*     \*     \*     \*     \*
>
> Because an action on a rejected claim is a new action instituted after the commencement of delinquency proceedings, the requirement that the action be brought in the court where the delinquency proceeding is pending is consistent with the venue provisions of section 4(h). We agree with the Seventh Court of Appeals' holding in *Whitson* that section 3(h) sets out the mandatory and exclusive venue of actions on rejected claims.

792 S.W.2d at 209. As we observed in *Whitson*, the filing of the lawsuit in a district court of improper venue still vests the judge with the jurisdictional power to render an order to transfer.

In the instant cause, the Dodgins filed the suit in the appropriate county, Travis County, and the appropriate district court, the 250th Judicial District Court. How-

ever, by filing the suit under the same cause number as the original delinquency proceeding, they ran afoul of the express Code prohibition against intervening in the delinquency proceeding. The Receiver contends that the punishment for violating the code section should be dismissal of the suit with prejudice. We disagree. We note that this is not a case where we are asked to uphold a district court's dismissal with prejudice. The record clearly indicates that the trial judge dismissed the Dodgins' cause in error and, after a hearing on reconsideration, reinstated the lawsuit. The Receiver asks us to reverse the order of the district court which reinstated this cause, severed it from the delinquency proceeding and assigned it a separate cause number. This we decline to do. Based upon our holding in *Whitson*, the Dodgins' filing error was not jurisdictionally fatal. The district court had jurisdiction to exercise its discretion to reinstate and sever the lawsuit from the delinquency proceeding. Section 2 of the Guaranty Fund Act provides that its purpose is the protection of those parties holding claims against insolvent insurance carriers. Tex.Ins.Code Ann. art. 21.28–C, § 2 (1981). We cannot say that in the face of this statutory purpose, the trial court's refusal to dismiss a claim because of a venue mistake constitutes reversible error. The Receiver's first point of error is overruled.

## 2. Release

■ In his second point of error, the Receiver contends that the Dodgins' case should be barred because of a prior release that they signed with the receiver for Early American.

We note at the outset that this is one of the issues, among many, that were submitted to the court in a bench trial. Release is an affirmative defense that was decided against the Receiver by the trial court. Although the Receiver filed a motion for new trial, he did not request findings of fact or conclusions of law. As we stated in *Franklin v. Donoho:*

> Where, as here, the record contains no specific findings of fact, but it does con-

tain a statement of facts and the documents introduced in evidence, the appellate court is bound to presume the trial judge found every issuable factual proposition necessary to sustain his judgment, *provided:* (1) the proposition is one raised by the pleadings and supported by the evidence; and (2) the trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision. To prevail in this situation, the appellant may show that the undisputed evidence *negatives* one or more of the elements essential to the decision; or he may show that the appellee's pleadings omit one or more of the essential elements, and that the trial was confined to the pleadings. [citations omitted].

*Franklin v. Donoho,* 774 S.W.2d 308, 311 (Tex.App.1989, no writ).

In the instant cause, after Early American was placed into receivership and the counsel hired by Early American to represent Permit Haulers withdrew, the Dodgins and Permit Haulers settled. The basic agreement reached was that the Dodgins would agree not to execute on a final judgment rendered against Permit Haulers except to the extent that that judgment could be satisfied by insurance coverage from either Early American or Mission National. The covenant not to execute provided, "[I]t is further expressly agreed that Donald D. Dodgin and Peggy Jean Dodgin reserve the right to proceed against and take judgment against Permit Haulers, Inc." After entering into these agreements, the Dodgins took a three-million-dollar judgment against Permit Haulers in a trial before the court.

The district court in the instant case held that this final judgment did not result from fraud or collusion. The Receiver does not bring forth any point of error on appeal challenging this conclusion of the trial court.

The release relied upon by the Receiver is a release for $100,000 entered into between the Receiver for Early American and the Dodgins. While the agreement purports to release Permit Haulers, Inc., as well as its primary insurance carrier, Early American, the release specifically carves out and reserves any cause of action which the Dodgins might have against Mission National. Additionally, the release cannot be read as a release of the three-million-dollar judgment rendered against Permit Haulers in favor of the Dodgins.

The trial court, based upon the foregoing evidence, rejected the Receiver's affirmative defense of release and bar. Based upon the foregoing evidence in the statement of facts and in the absence of any findings of fact or conclusions of law, we cannot say that the trial court erred in this regard. The Receiver's second point of error is overruled.

### 3. *The Final Judgment*

In his remaining points of error, the Receiver assails the final judgment rendered by the district court for a number of reasons. We will examine each one below.

#### a. Statutory Cap

■ In his fifth point of error, the Receiver contends that the district court erred in rendering final judgment in the amount of $100,000 for each of the claimants, Donald D. Dodgin and Peggy Dodgin. The Dodgins recovered judgment against Permit Haulers on May 16, 1985. The Guaranty Fund Act was amended on June 15, 1985, to increase the per person statutory cap from $50,000 to $100,000. The Receiver contends that since the Dodgins are attempting to collect on a final judgment rendered on May 16, 1985, they are limited to the $50,000 per person statutory cap then in effect. We disagree. The delinquency proceeding against Mission National as the excess insurance carrier for Permit Haulers did not begin until February 27, 1987. This Court has stated in *Durish v. Channelview Bank,* 809 S.W.2d 273 (Tex.App.1991, writ denied), that the controlling date for a covered claim, as that term is defined in the Guaranty Fund Act, is the date of the inception of the delinquency proceeding. Since on the date that Mission National was placed into receiver-

ship, the Act provided for $100,000 per person from the Guaranty Fund, we hold that the Dodgins are entitled to the $100,000 per person statutory maximum and are not limited to the pre–1985 statutory cap. The Receiver's fifth point of error is overruled.

b. Insurance Policy

In his third point of error, the Receiver contends that since Early American never paid the underlying limits of one million dollars of primary insurance, the district court erred in rendering judgment against Mission National as an excess carrier. We reject the Receiver's argument. The record reveals that before it was placed into receivership, Mission National was given ample opportunity to defend Permit Hauler's case against the Dodgins. In addition, the record reveals that although Mission National was called upon to settle or compromise the Dodgins' claim, they denied all liability. As this Court has previously held, when an insurance carrier has refused to defend and has denied all liability in a case, the receiver for that same carrier cannot use policy defenses to defeat the claim. *Langdeau v. Pittman*, 337 S.W.2d 343 (Tex.App.1960, writ ref'd n.r.e.). Additionally, evidence before the court showed that the Mission National umbrella liability policy provided, on page 6, paragraph K, that Mission National will pay "any claims' hereunder even if insured is insolvent," and, on page 2, under limit of liability paragraph III(1)(2), that Mission National will pay the "excess of the reduced underlying limit" or "in event of exhaustion continue in force as underlying insurance." The record establishes that the Dodgins recovered the maximum statutory limits available to them when Early American was placed into receivership. We will not permit the Receiver to hide behind the fact that the underlying primary carrier was itself placed into receivership to escape liability for paying the statutory limits applicable for an excess carrier which is also in receivership. Therefore, the trial court was correct in permitting a $200,000 statutory recovery from the Receiver for the excess carrier.

In his fourth point of error, the Receiver attacks the final judgment of the district court on the basis that the Mission National policy was an indemnity policy rather than a liability policy. His point is without merit. The record reveals that this point was never raised either by pleading or motion to the trial court. Therefore the point has been waived. *Gray–Taylor, Inc. v. Tennessee*, 587 S.W.2d 668, 671 (Tex. 1979). *See also Johnson v. J. Hiram Moore, Ltd.*, 763 S.W.2d 496, 500 (Tex.App. 1988, writ denied). However, we also note that the insurance policy itself lists its type as "umbrella *liability*." This issue, if properly presented, would have been decided by the trial court in the non-jury phase of the trial. Since there are no findings of fact or conclusions of law, all presumptions are taken as in favor of the district court's final judgment and no point is presented to this Court for appellate review. The Receiver's points of error three and four are accordingly overruled.

c. Prejudgment Interest

In the sixth point of error, the Receiver contends that the district court erred in providing for prejudgment interest in the final judgment and awarding court costs against the Receiver. The Receiver argues that article 21.28, § 8(d) of the Texas Insurance Code prohibits the payment of prejudgment interest on a claim brought against the Guaranty Fund. That section of the Code provides "interest shall not accrue on any claim subsequent to the date of the commencement of delinquency proceedings." Tex.Ins.Code Ann. art. 21.28, § 8(d) (1981). We agree. As we stated in *Durish v. Mayo Dancer*, 819 S.W.2d 258 (Tex.App. Austin—1991, n.w.h.), article 21.28, § 8(d), "prohibit[s] a Receiver from paying prejudgment interest that otherwise would accrue after the inception of the delinquency proceeding and before the entry of the court's judgment,...." Therefore, the point of error of the Receiver is sustained and the district court's judgment will be reformed to eliminate any prejudgment interest.

However, the balance of this point raises the question of assessment of court costs.

We find nothing in the Guaranty Fund Act that requires the Receiver be treated differently than any other litigant in the courts of this state. We therefore hold that items such as postjudgment interest and court costs may be appropriately assessed against the Receiver.

#### 4. *Jury Verdict/Damages*

In his seventh, and final, point of error, the Receiver attacks as excessive the final judgment of the district court because it is based upon a jury verdict of $1,935,000. This point is without merit. The district court specifically found that the three-million-dollar judgment obtained by the Dodgins against Permit Haulers was not collusive. That finding has not been attacked on appeal by a point of error on behalf of the Receiver. That finding alone would sustain the $200,000 judgment rendered by the district court against the Receiver and so renders the jury finding on damages moot. While we find it unnecessary to consider the point, we do note that the question of damages is better left to the sound discretion of the trier of fact. *Northwest Mall, Inc. v. Lubri–Lon Int'l, Inc.,* 681 S.W.2d 797, 804 (Tex.App.1984, writ ref'd n.r.e.); *Hammond v. Stricklen,* 498 S.W.2d 356, 363 (Tex.Civ.App.1973, writ ref'd n.r.e.); *see also Missouri Pacific R.R. Co. v. Lehmburg,* 88 Tenn. 23, 12 S.W. 338, 340–41 (1889). On review, the record reveals that these were extremely serious injuries; this Court will not substitute its view of damages for that of the trier of fact. The Receiver's seventh point of error is overruled.

#### 5. *Reformation of the Final Judgment*

The final judgment of the district court is reformed to eliminate prejudgment interest and as so reformed is affirmed. The interest on the reformed judgment will begin on February 2, 1990, until paid at the rate of ten percent.

POWERS, J., not participating.