Charles Ray **HORTON**, Appellant,

v.

**STATE DEPARTMENT OF INSURANCE RECEIVER J. ROBERT HUNTER and Texas Property and Casualty Insurance Guaranty Association, Appellees.**

No. 03–94–00525–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

Michael L. Atkinson, Atkinson & Associates, P.C., Conroe, for appellant.

Walter L. Taylor, Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

Appellant Charles Ray Horton settled a personal injury lawsuit against All–Ways Trucking Company ("All–Ways") and executed a "Release and Assignment Agreement." Horton then sued the receiver of All–Ways's impaired insurer, appellee Department of Insurance Receiver J. Robert Hunter (the "Receiver"), to collect the damages awarded under the judgment rendered against All–Ways. The Receiver filed a motion for summary judgment, which the trial court granted. Horton then filed a motion for new trial, which the trial court overruled. In four points of error, Horton challenges the trial court's order granting summary judgment and its order overruling his motion for new trial. We will reverse the judgment of the trial court and remand the cause for trial on the merits.

## BACKGROUND

In December 1986, Horton was injured in an accident involving a tractor/trailer rig leased by All–Ways. Horton sued All–Ways, and after a bench trial, the trial court rendered judgment against All–Ways for $350,-000 pursuant to the parties' joint motion for entry of judgment. Horton and All–Ways executed a "Release and Assignment Agreement," outlining their agreement regarding the filing of the joint motion for entry of judgment. In the agreement, All–Ways agreed to assign to Horton all rights or causes of action, or any rights of recovery that it had against Dexter Lloyds Insurance Company ("Dexter"), its successor, *or its receiver* for monies awarded under the judgment. In exchange and "[i]n consideration of the Judgment becoming Final," Horton entered into a covenant not to execute, promising not to

(1) abstract or record the Judgment; (2) levy execution against [All–Ways]; (3) garnish [All–Ways's] accounts; (4) attach assets of [All–Ways]; (5) take any action to collect the Judgment from [All–Ways]; *except that CHARLES RAY HORTON shall and is granted permission and assignment of the right to pursue any and all efforts to recover monies awarded pursuant to the Judgment from any* insurance company, a *Receiver* appointed or selected by the Liquidation Division of the State Board of Insurance or by a Texas State District Court.

(Emphasis added.)

At the time of the accident giving rise to the judgment, All–Ways Trucking was cov-

ered under an insurance policy issued by Dexter; however, Dexter was placed into receivership before trial, and Hunter was appointed Receiver to handle the impaired insurer's claims. Therefore, Horton filed a proof of claim with the Receiver. *See* Tex. Ins.Code Ann. art. 21.28, § 3(e) (West Supp. 1995) (permitting persons having causes of action against one insured by impaired insurer to file claim with receiver). The Receiver took no action on his claim, and Horton filed suit against the Receiver for recovery of the damages sustained in the accident. The Receiver then rejected Horton's claim on the grounds that the claim was "currently involved in litigation and will be resolved through that process."

In the pending lawsuit, the Receiver moved for summary judgment, denying liability on the basis that Horton no longer had a viable cause of action against All–Ways because Horton had released it from all liability. According to the Receiver, since All–Ways was effectively released, Horton had no claim against the Receiver. The trial court granted the Receiver's motion and rendered a take-nothing judgment against Horton.

■ Appellee Texas Property and Casualty Insurance Guaranty Association (the "Guaranty Association") intervened after the trial court rendered judgment. As the statutory successor to certain "covered claims" against receivership estates of impaired carriers, the Guaranty Association is a proper party to any pending litigation involving a covered claim. *See* Tex.Ins.Code Ann. art. 21.28–C, § 5(8) (West Supp.1995) (defining "covered claim"). Although responsibility for covered claims is now automatically transferred to the Guaranty Association by operation of law, Tex.Ins.Code Ann. art. 21.28, § 3(i) (West Supp.1995), at the time it intervened in the present case, the Guaranty Association was permitted to "elect" to assume responsibility for payment of covered claims on an estate-by-estate basis. Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 9.23, 1993 Tex.Gen.Laws 2559, 2638. Pursuant to this right, the Guaranty Association elected to assume responsibility for payment of all cov-ered claims on policies issued by All–Ways's impaired insurer, Dexter.

The Guaranty Association's potential responsibility for covered claims is limited by a statutory cap of $100,000. Tex.Ins.Code Ann. art. 21.28–C, § 5(8) (West Supp.1995). The Receiver retains responsibility for non-covered claims, including that portion of the covered claims in excess of $100,000. Because Horton alleges damages of at least $350,000, both the Guaranty Association and the Receiver are proper parties in this action.

## DISCUSSION

■ In his first and third points of error, Horton contends that the trial court erred in granting the Receiver's motion for summary judgment because the Receiver failed to prove entitlement to judgment as a matter of law based on the defense of release. The standards for reviewing a motion for summary judgment are well established:

(1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In addition, instead of directly attacking one or more elements of the plaintiff's cause of action, a defendant-movant may move for summary judgment on the basis of an affirmative defense. To be entitled to summary judgment, the movant must expressly present and conclusively prove each element of the affirmative defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972).

■ Article 21.28 of the Texas Insurance Code governs claims and suits against receivers appointed to take charge of impaired insurers. A third-party claimant with a cause of action against one insured by an impaired insurer may file a claim with the

receiver and has a statutory right of action against the receiver once the claim is rejected. *See* Tex.Ins.Code Ann. art. 21.28, § 3(e), (h) (West Supp.1995). The claimant's right of recovery against the receiver on a rejected claim is dependent upon the viability of the claim against the insured and the ability to prove the insured's liability for the injuries.

Appellees argue that the settlement of all claims between Horton and All–Ways Trucking destroyed the required link between the insured's liability and the Receiver's corresponding responsibility to pay, citing *Pool v. Durish*, 848 S.W.2d 722 (Tex.App.—Austin 1992, writ denied). We disagree. In *Pool*, the claimant failed to obtain a final judgment against the insured before entering into a settlement agreement by which the insured was released from "any and all claims." *Id.* at 722. In contrast, the agreement in the instant cause was conditioned upon the judgment becoming final and specifically left intact the link between the All–Ways's liability and the Receiver's responsibility to pay the claim by reserving to Horton the right to proceed against All–Ways Trucking's insurer, or the Receiver if the insurer were to become impaired. As in *Brodhead v. Dodgin*, 824 S.W.2d 616 (Tex.App.—Austin 1991, writ denied), the claimant, Horton, obtained a final judgment against the insured but agreed not to execute on the judgment. The claim against the insured was never released. *See id.* at 619–20.[1]

Appellees attempt to distinguish *Dodgin* by pointing out that *Dodgin* involved the claimant's agreement with the insured's primary insurer, not an agreement with the insured. However, this factual distinction is irrelevant to our holding. In both *Dodgin* and the instant cause, the claimant obtained a final judgment against the insured, which established the insured's liability for the claimant's injuries and thus represented the crucial link between the insured's liability and the Receiver's corresponding responsibility to pay the claim.

■ Appellees further argue that a covenant not to execute, even when coupled with a final judgment against the insured *and* an assignment of the insured's rights against its insurer, operates as a complete release of the insured's liability in the absence of a duty to defend on the part of the Receiver or the Guaranty Association. Appellees' argument is premised upon their theory that covenants not to execute have no place in the statutory receivership scheme. Appellees contend that covenants not to execute were developed in response to bad-faith insurance practices, in which the insurer breached its contractual duty to defend its insured. A covenant not to execute, appellees argue, is a "quasi-tortious, quasi-contractual remedy" that courts have allowed insureds to use when they are victimized by the tortious conduct of their contractual partners, the insurers. They cite the dissenting opinion in *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex.1994), in support of their argument that the practice of allowing insureds and plaintiffs to enter into covenants not to execute is rooted in the insurer's failure to defend. *See id.* at 867–72 (Hightower, J., dissenting). Appellees argue that because neither the Receiver nor the Guaranty Association had a duty to defend All–Ways, the covenant not to execute necessarily operated as a complete release of All–Ways's liability.

Horton correctly contends that a covenant not to execute does not operate as a release, even in the absence of a duty to defend. We reject appellees' argument that a covenant not to execute is a quasi-tortious "remedy" that operates as a release in the absence of a duty to defend.[2] A covenant not to execute is a contract. *Ard v. Gemini Exploration Co.*, 894 S.W.2d 11, 15 (Tex.App.—Houston [14th Dist.] 1994, writ denied). While the

---

1. We specifically recognized this crucial distinction in *Pool*. In *Pool*, we explained that careful examination of the cases cited by the Pools, including *Dodgin*, failed to reveal how the Pools' release reserved any right of action against the receiver. The claimant in *Dodgin* obtained a final judgment and entered into an agreement not to execute on the judgment; the claim against the insured was never released. In contrast, the Pools obtained no final judgment, and their settlement agreement involved an unconditional release of the insured from liability. *See Pool*, 848 S.W.2d at 723.

2. Therefore, we need not determine whether the Receiver or the Guaranty Association had a duty to defend a party insured by Dexter, the impaired insurer.

dissent in *Garcia* recognized that covenants not to execute provide insurers with a strong incentive to give due consideration to the interests of their insureds, it also recognized that covenants not to execute "should be encouraged as a matter of public policy favoring settlements and minimizing the insured's potential damages." *Garcia,* 876 S.W.2d at 869, 868–69. In the instant cause, the covenant not to execute was a contract between All–Ways and Horton that facilitated a settlement between the parties and minimized All–Ways's potential liability.[3]

The legal effect of a covenant not to execute "is similar to a covenant not to sue because it does not eliminate a damage award; the underlying tort liability remains." *Ard,* 894 S.W.2d at 15; *see also Y.M.C.A. v. Commercial Standard Ins. Co.,* 552 S.W.2d 497, 505 (Tex.Civ.App.—Fort Worth 1977), *writ ref'd,* 563 S.W.2d 246 (Tex.1978). Therefore, the fact that All–Ways will not have to pay any damages does not eradicate the insurer's—or in this case the Receiver's—duty to pay. *See Ard,* 894 S.W.2d at 15. We thus hold that appellees failed to prove the affirmative defense of release as a matter of law and sustain Horton's first and third points of error.[4] The judgment of the trial court is reversed, and the cause is remanded for trial on the merits.

Reversed and Remanded.

---

3. In the proof of claim he filed with the Receiver, Horton asserted $500,000 in damages while the judgment rendered in his favor awarded only $350,000.

4. Because of our disposition of Horton's first and third points of error, it is unnecessary to address his remaining points of error.