

## NUMBER 13-09-00243-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**DAVID LLOYD ESAU,**                                                    **Appellant,**

**v.**

**CARLOS VILLARREAL,**                                                    **Appellee.**

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Justice Garza

We withdraw our memorandum opinion and judgment of July 8, 2010, and substitute

the following in its place.

Appellant, David Lloyd Esau, appeals an order to specifically perform on a real

estate contract.  Esau presents six issues for review, which we renumber and reorganize

as three,[1] *see* TEX. R. APP. P. 47.1, arguing that the trial court erred when: (1) it failed to recognize that appellee, Carlos Villarreal's, remedies for a default under the contract did not include specific performance; (2) it determined that Villarreal was "ready, willing, and able" to timely perform his obligations under the contract, thus entitling him to specific performance; and (3) it denied Esau his reasonable and necessary attorney's fees. We reverse and remand.

## I. BACKGROUND

Esau purportedly had clear title to lots 16, 17, 40, and 41 in Seminary Heights, Hidalgo County, Texas. On April 4, 2005, Esau and Villarreal signed a "Farm and Ranch Contract" wherein Esau agreed to sell and Villarreal agreed to buy these lots for $220,000. The closing date for the contract was July 22, 2005, and time was of the essence because Villarreal could only avail himself of a favorable federal tax provision if the sale occurred

---

[1] Esau presented the following issues in his brief:

1. The trial court erred in entering judgment for Villarreal because, due to factors beyond Esau's control, he could not deliver a commitment for the title policy with regard to one of the lots, and under part 15 of the Farm and Ranch Contract, Villarreal's only remedies were to extend the time for Esau to perform by up to 15 days or terminate the contract as his "sole remedy."

2. Villarreal was not entitled to specific performance because there was no evidence to show that he was ready, willing, and able to timely perform his obligations under the contract. Villarreal did not perform his obligations under the contract, or show that he had no adequate remedy at law.

3. Villarreal was not entitled to specific performance because Esau timely cancelled the contract.

4. Villarreal was not entitled to specific performance because the contract terminated pursuant to its terms.

5. Villarreal was not entitled to specific performance because he abandoned the contract by refusing to timely perform it.

6. The Court erred by failing to render judgment that plaintiff take nothing and by failing to award to Esau his reasonable and necessary attorney['s] fees.

We consider issues two through five together because they all deal with the issue of specific performance.

2

at or around this time.[2]

Significantly, the contract included the following default provision:

DEFAULT: If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

The "Commitment" referred to the following: "Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment)." Accordingly, after signing the contract, the parties submitted the contract to Edwards Abstract & Title Company ("Edwards Abstract") for further handling. Villarreal also tendered $2,500 in earnest money to Edwards Abstract, which would be credited towards the purchase price.

On or about May 15, 2005, Edwards Abstract informed Esau and Villarreal that their research revealed that a "wild deed" existed on lot 16. During trial, an Edwards Abstract employee explained that a "wild deed is a deed that has been filed of record by individuals that do not have record ownership on the property." The title company reported that Casimir J. Staszcuk and Adele Staszcuk conveyed a special warranty deed with a vendor's

---

[2] The provision at issue allows one to defer capital gains taxes if the sale of one property is used to purchase another "like kind" property for investment or business purposes. *See* 26 U.S.C. § 1031. The property to be exchanged must be identified within forty-five days of the initial sale and received within one hundred eighty days. *Id*.

3

lien to Jose Antonio Garcia on Lot 16, which was recorded in the Hidalgo County Clerk's records. Esau testified that this was the first time he learned about this purported claim and wild deed on Lot 16.

Due to this unexpected issue, Esau and Villarreal extended the closing date on the contract from July 22, 2005 to September 27, 2005. During this time, Esau learned that the recording from the Staszcuks to Garcia was a mistake and proceeded to try to clear the title.[3] The mistake, however, was not corrected prior to the extended deadline for closing. On September 27, 2005, Esau's realtor sent a letter to Villarreal's realtor acknowledging the wild deed on Lot 16 and indicating that Esau would not be able to deliver clear title on time. The letter advised that Esau was "cancelling" the contract and enclosed a "Release of Earnest Money" form authorizing Edwards Abstract to release Villarreal's earnest money. The letter also enclosed a $250 check Villarreal had tendered for an "option not to purchase" clause.

Counsel for Villarreal responded on October 25, 2005 with the following correspondence:

> Dear Mr. Esau:
>
> Enclosed herein is your check number 3828 in the amount of Two Hundred
> Fifty and 00/100ths ($250.00) Dollar [sic]. This check will not be cashed because we believe the contract is still in effect, and have proceeded to file a law suit [sic] against you. If you should have any questions, please contact our office at your earliest convenience.

---

[3] Esau had to file another lawsuit to obtain clear title to Lot 16. The record revealed that, on October 31, 2007, the presiding judge of the 206th Judicial District Court of Hidalgo County, Texas ruled that "neither Casimir J. Staszcuk or Adele Staszcuk had any interest in said lot 16 when they signed a special warranty deed with Vendor's Lien that was then recorded under Clerk's File No. 470723, Official Records, Hidalgo County, Texas which purported to convey said lot 16 to defendant Jose Antonio Garcia." Villarreal had already filed the underlying lawsuit for specific performance when title was finally cleared on Lot 16.

4

Villarreal subsequently filed the underlying lawsuit for specific performance. The trial court ruled in favor of Villarreal, and Esau filed this appeal.

## II. STANDARD OF REVIEW

"When the trial court acts as a fact[-]finder, its findings are reviewed under legal and factual sufficiency standards." *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). If no findings of fact are filed or requested, as in this case, the trial court's judgment necessarily implies all findings of fact to support it. *Schoeffler v. Denton,* 813 S.W.2d 742, 745 (Tex. App.–Houston [14th Dist.] 1991, no writ); *see IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997). "The trial judge's decision can be sustained on any reasonable theory that is consistent with the evidence and the applicable law, considering only the evidence favorable to the decision." *Austin Area Teachers Fed. Credit Union v. First City Bank—NW Hills, N.A.*, 825 S.W.2d 795, 801 (Tex. App.–Austin 1992, writ denied); *Brodhead v. Dodgin*, 824 S.W.2d 616, 620 (Tex. App.–Austin 1991, writ denied).

To prevail, the appellant may show that the undisputed evidence negates at least one of the essential elements of the cause of action, or he may show that the appellee's pleadings lack one or more of the elements essential to the cause of action and that the trial court was limited to the pleadings. *Brodhead*, 824 S.W.2d at 620; *Franklin v. Donoho*, 774 S.W.2d 308, 311 (Tex. App.–Austin 1989, no writ). However, "[i]f there is evidence to support the implied finding of fact, the appellate court must uphold the judgment on any theory of law applicable to the case." *Giangrosso v. Crosley*, 840 S.W.2d 765, 769 (Tex. App.–Houston [1st Dist.] 1992, no writ).

## III. DISCUSSION

## A.    The Buyer's Remedies

Esau contends that Villarreal's remedies were limited to either an extension of time to perform the contract or to termination of the contract because Esau could not have known about the wild deed.  He argues that the existence of the wild deed was an event "completely out of his control" and thus asserts that the following provision from the Default Clause applies:

> If, *due to factors beyond Seller's control*, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money.

(Emphasis added.)

The trial court ruled otherwise and, under the applicable standard of review, we presume that the trial court found facts supporting the judgment.  *Brodhead*, 824 S.W.2d 619-20 ("Where. . . the record contains no specific findings of fact. . . the appellate court is bound to presume the trial judge found every issuable factual proposition necessary to sustain his judgment . . . .") (quoting *Franklin*, 774 S.W.2d at 311).

We note that Esau testified that he has twenty-five years of experience selling and purchasing property.  He also testified that he owned Lot 16, the property at issue, since 1986.  Further, under cross-examination, Esau acknowledged that Lot 16 had been listed for sale for at least 200 days.

The foregoing evidence supports the notion that Esau had the experience, knowledge, and time to discover the wild deed on Lot 16 prior to its offer for sale.  The trial

court, based upon this evidence, implicitly ruled that the wild deed on Lot 16 was therefore a matter within Esau's control. When Esau failed to comply with the contract, his default entitled Villarreal to specific performance under the following contractual provision: "If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract."

Because there is evidence to support the implied finding of fact that the wild deed was a matter within Esau's control, we uphold the trial court's ruling regarding Villarreal's available remedies and overrule Esau's first issue.

## B. Specific Performance

A party seeking specific performance must plead and prove: (1) compliance with the contract, including tender of performance unless excused by the defendant's breach or repudiation; and (2) the readiness, willingness, and ability to perform at relevant times. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008); *see also Gar Gil, L.L.C. v. Benson*, No. 13-08-00432-CV, 2009 Tex. App. LEXIS 4844, at *9 (Tex. App.–Corpus Christi June 25, 2009, no pet.) (mem. op.). In addressing a party's readiness, willingness, and ability to perform, Texas courts have recognized that "'[t]he doctrine is fundamental that a party seeking the remedy of specific performance . . . must show himself to have been ready, desirous, prompt, and eager.'" *DiGiuseppe*, 269 S.W.3d at 593 (quoting *Ratcliffe v. Mahres*, 122 S.W.2d 718, 721-22 (Tex. Civ. App.–El Paso 1938, writ ref'd)).

> [T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue

performing its part of the agreement. The plaintiff's burden of proving readiness, willingness[,] and ability is a continuing one that extends to all times relevant to the contract and thereafter.

*Id*. (quoting 25 RICHARD A. LORD, WILLISTON ON CONTRACTS § 67:15, at 236-37 (4th ed. 2002) (citations omitted)).  In other words, the party seeking specific performance has the burden of proof to establish that it can perform the contract.  *DiGiuseppe*, 269 S.W.3d at 596; *see Corzelius v. Oliver*, 148 Tex. 76, 220 S.W.2d 632, 634-35 (1949).

Section 4A of the contract between Esau and Villarreal revealed that a third-party financier, Capital Farm Bank, intended to loan $176,000 to Villarreal to purchase all of Esau's lots.  According to the record, however, it appears that one of Capital Farm Bank's requirements for providing the financing was clear and marketable title to the properties.  The wild deed on Lot 16 prevented this financing from occurring, as revealed in this section of the trial record:

Q.      [Appellant's counsel]  Doctor Villarreal, after the—I just want to make it clear that after the problem with lot 16 came up, you did not want to go through with the original deal on the—

A.      [Villarreal]  I did want to.

Q.      Okay.

A.      I did want to but the thing is that *I could not*.

          . . . .

Q.      So the cloud on the title was really not a problem for you?

A.      *The cloud on the title was something that was not going to make this contract go through and that's the problem*.

8

Q. When you say "go through" what do you mean by that? Don't you mean you refuse to perform under that because of the alleged cloud?

A. Well, that would involve a third[-]party financing problem.

. . . .

Q. Did you have third[-]party financing arranged?

A. Yes. Instructions were given and the closing date was done. Everything was already there. The down payment was ready and everything.

Q. What third party was going to finance it?

A. Capital Farm.

. . . .

Q. Did you ever tell them that there was a problem with the deal and—

A. Yeah. In fact, they gave me—

Q. —that it had a wild title—let me finish my question. Did you ever tell your third party financier that there was some kind of problem with the deal having to do with this lot 16?

A. Yeah. Of course, they knew.

. . . .

Q. Do you see where it says "Financing"?

A. Yes, sir.

Q.      Under 4A it says, "Third Party Financing. One or more third party mortgage loans in the total amount of $176,000. If the property does not satisfy the lenders [sic] underwriting requirements for the loans, this contract will terminate and the earnest money will be refunded to buyer." Did I read that correctly?

A.      Yes, sir.

(Emphasis added).

Villarreal's testimony revealed that the cloud on Lot 16 prevented Capital Farm from authorizing the loan. In fact, he later testified that, "there was no way [he] could close on that property because there was no way [he] could get the finances." Villarreal, therefore, had no "ability to perform" the contract because he did not have the financing to purchase the property at issue. Although it is obvious from the record that Villarreal was "ready, desirous, prompt, and eager" for this transaction to occur, the evidence is undisputed that, because of the wild deed, Villarreal was financially unable to purchase the land. Moreover, "offering to perform does not establish the ability to perform . . . ." *DiGiuseppe*, 269 S.W.3d at 599.

The foregoing undisputed evidence establishes that Villarreal did not have the financing to purchase the properties under contract at the time of the intended closing, which negates the "ability to perform" element under the doctrine of specific performance. *See Brodhead*, 824 S.W.2d at 620; *Franklin*, 774 S.W.2d at 311. Thus, although we have determined that specific performance was a remedy available to Villarreal under the contract, the trial court erred in awarding it because Villarreal was not able to perform. *DiGiuseppe*, 269 S.W.3d at 598 (holding that although specific performance was "available

10

as a remedy. . . nothing in the [contract] suggests [Villarreal] is relieved of his obligation to prove he is entitled to it under the law."). Accordingly, we sustain Esau's second issue.

## IV. CONCLUSION

We reverse. Having concluded that Villarreal is not entitled to specific performance, we remand this case to the trial court to determine whether Villarreal is entitled to "other such relief as may be provided by law," as set forth by the contract.[4]

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
19th day of August, 2010.

---

[4] We do not address Esau's third issue regarding attorney's fees, as this award will be contingent on the trial court's determination concerning whether Villarreal is entitled to "any other relief." In accordance with Section 17 of the contract, the party that prevails should receive attorney's fees: "the prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party."